**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **AMANDA BESS,**<br><br>     *Plaintiff,*<br><br>**v.**<br><br>**THE DENTAL SCHEDULING CENTER INC.,** *et al.,*<br><br>     *Defendants.* | **CIVIL ACTION NO.**<br>**3:23-cv-00083-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiff Amanda Bess filed a Complaint [Doc. 1] alleging that her former employer unlawfully discriminated against her under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Family and Medical Leave Act ("FMLA"). Plaintiff later filed an Amended Complaint [Doc. 9] making the same allegations. Defendants now move to dismiss Plaintiff's Amended Complaint. For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss [Doc. 11].

### BACKGROUND[1]

Plaintiff Amanda Bess, an African-American female, began working as an employee for The Dental Scheduling Center, Inc. d/b/a Smith Dental Care ("Defendants") in January 2021. *See* [Doc. 9, pp. 4–5]; [Doc. 9-3, p. 1]. Plaintiff alleges that every Caucasian/white employee in Plaintiff's department received a raise after they had worked there for 90 days, but when she asked her supervisor why she did not likewise receive one after she had been there 90 days, they told her she was making "too much money." [Doc. 9, p. 5]. Frustrated by the response, Plaintiff spoke directly to the CEO about her concerns and received her first disciplinary action for failing to follow the chain of command. [*Id*.]. Only after working for Defendants for a year did Plaintiff receive a $1.50/hour raise. [*Id*. at p. 6].

Beginning around October or November 2021, Plaintiff began performing managerial functions and was applauded for her hard work; so, in December of 2021, she applied and interviewed for an official managerial position within her department. [*Id*. at pp. 6–7]. However, although Defendants hired another African-American employee instead of Plaintiff, the other employee was less qualified and never actually stepped into the role. [*Id*. at p. 6]. Instead, Plaintiff—without receiving

---

[1] The following facts are taken from Plaintiff's Amended Complaint [Doc. 9] and are assumed to be true for the purpose of ruling on the Motion before the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that when ruling on a 12(b)(6) motion, the Court must accept the facts set forth in the complaint as true.).

a raise or promotion—continued to perform the managerial functions and even began training the other employee. [*Id.* at pp. 6–7]. Until Defendants terminated Plaintiff in May 2022, the other employee supposedly hired to be the manager never actually took over the duties for the managerial role. [*Id.*]. Eventually, Plaintiff received a raise, but never a promotion. [*Id.* at p. 8].

In March 2022, the office implemented a cleaning rotation for all employees, and Plaintiff was tasked with cleaning toilets—a job no Caucasian/white managers had to do. [*Id.* at p. 9]. Again, even though Plaintiff wasn't officially a manager, she alleges that she nonetheless performed all of the duties of one—she just never got the title. [*Id.*].

Finally, in late April 2022, Plaintiff suffered severe pain and swelling from a dental condition and called in sick for one week. [*Id.*]. Defendants did not inform Plaintiff of leave offered under FMLA. [*Id.*]. Instead, while out on leave, Plaintiff received a second disciplinary action, allegedly for conduct ranging between June 2021 and April 2022. [*Id.* at pp. 10–11]. Upon her return to work on May 2, 2022, Defendants fired Plaintiff. [*Id.* at p. 11]. Plaintiff alleges that Defendants' reasons for terminating her (performance, conduct, and insubordination) were merely a pretext to hide their illegal discrimination. [*Id.*].

On October 25, 2022, Plaintiff (notably without the assistance of counsel) filed a charge of discrimination against Defendants with the Equal Employment

Opportunity Commission ("EEOC"). [*Id*. at p. 3]. On the charge form, Plaintiff

checked the boxes for "Race," "Retaliation," "Disability," and "Other *(Specify)*." [Doc.

9-2, p. 1]. However, the text of her charge only discusses her complaints to her

supervisor about her dental care, its cost, and her termination upon her return from

leave. [*Id*.]. She never mentioned or even alluded to race in the "[p]articulars" section

of the EEOC charge. *See* [*id*.].

## LEGAL STANDARD

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district

courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 572 (2007). In accepting the factual allegations as true, courts

are to construe the reasonable inferences from them in the light most favorable to the

plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of

a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-

12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross &*

*Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a

defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as

a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1,*

*Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation

omitted). A complaint survives a Rule 12(b)(6)-based motion only if it alleges sufficient

factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough*, 907 F.3d at 1333 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

Courts use a two-step framework to decide whether a complaint survives a motion to dismiss. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those

5

allegations allow the court to reasonably infer that [a] plaintiff is entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case,

critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

### 1.    Failure to Exhaust Administrative Remedies for Title VII Claims

Defendants argue that Plaintiff's Title VII race discrimination and retaliation claims are barred because she failed to exhaust her administrative remedies with EEOC prior to bringing this lawsuit. [Doc. 11, pp. 5–8]. On this, Defendants are correct, and the Court **DISMISSES** Plaintiff's Title VII claims for failure to exhaust administrative remedies.

Prior to filing a Title VII action, an employee first must file a timely charge of discrimination with the EEOC. *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Wrapped up in this rule are two issues for consideration: (1) whether Plaintiff filed her EEOC charges in a timely manner and (2) whether the substance of her complaint filed in this Court sufficiently "gr[e]w out of" the factual allegations in her EEOC charge. *See Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). Let's look at those in turn.

a.    <u>Timeliness of Plaintiff's EEOC Charge</u>

First, "[f]or a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Defendants correctly argue that "because Plaintiff filed her [EEOC] Charge on October 25, 2022, any alleged act that occurred before April 28, 2022 (180 days prior) is time barred."[2] *See* [Doc. 11, p. 7]; [Doc. 9-2, pp. 1–2]. The United States Supreme Court has held that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." . . . Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 180 . . . [day] period after the act occurred.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102, 114 (2002). Because the only allegedly discriminatory or retaliatory act that occurred on or after April 28, 2022, is the Plaintiff's termination, all other claims that Plaintiff makes under Title VII (e.g., failure to promote, refusal to hire, any claim involving the disciplinary action she received on April 27, 2022) are time barred and are **DISMISSED** for failure to exhaust administrative remedies.[3]

---

[2] Plaintiff does not dispute this in her Response to the Defendants' Motion to Dismiss. *See* [Doc. 14].

[3] Defendants terminated Plaintiff on May 2, 2022. [Doc. 9, p. 11].

b.      The Substance of Plaintiff's EEOC Charge

Next, the Court moves on to the substance of Plaintiff's EEOC charge to determine whether the facts asserted in her EEOC charge would naturally grow to include her Title VII claims filed in this Court. As explained above, the sole Title VII claim that survives the 180-day time-bar is Plaintiff's termination on May 2, 2022. *See* [Doc. 9, p. 11].

"The purpose of [the] exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). In light of this purpose, the Eleventh Circuit has held that "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall*, 19 F.3d at 589 n.8; *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (holding that a Title VII complaint may encompass discrimination like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission). "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. The question, then, is whether Plaintiff's Title VII termination

claim naturally grows out of the facts alleged in her EEOC charge. The Court thinks not.

In her Response to the Defendants' Motion to Dismiss, Plaintiff argues that she "discuss[d] in her charge that mere weeks prior [to her firing], Defendants were telling [Plaintiff] how much she was needed at the company and raised her pay." [Doc. 14, pp. 4–5 (citing Doc. 9-2)]. Plaintiff continues: "It is, therefore, reasonable that the EEOC's investigation of [Plaintiff's] allegations would include Defendants' fabrication of the reasons for her termination."[4] [*Id.* at p. 5]. Finally, Plaintiff contends, "While she does not specifically use the terminology Defendants wish, [Plaintiff's] allegation relates to the fact that unlike the Caucasian/white managers who were out on dental leave and/or complained of treatment received by Defendants' dentists, [Plaintiff], who is African-American/black, was disciplined and terminated." [*Id.*]. These conclusions, however, depend on a *very* generous interpretation of Plaintiff's EEOC charge.

A realistic portrait of Plaintiff's charge is more like this: In the space provided for her to give a factual account, Plaintiff wrote about events pertaining to what she characterizes as a botched dental surgery she received from her employer on April 24, 2022, taking time off work, and her subsequent firing. *See* [Doc. 9-2, p. 1]. Specifically,

---

[4] Plaintiff states something similar in her Amended Complaint: "In her charge, Plaintiff alleged that her supervisor Matt had fabricated allegations regarding Plaintiff's work performance." [Doc. 9, p. 3].

from the face of the charge, it seems that Plaintiff received supposedly negligent dental treatment from Defendants on April 24, 2022, requested (through her supervisor) that Smith Dental cover its costs, stayed out of work until May 2, 2022, and Defendants fired her upon her return. *See* [*id*.]. Although Plaintiff checks the boxes on the EEOC form for "Race" and "Retaliation," she also selected the boxes for "Disability" and "Other *(Specify)*,"[5] but she never mentions race. *See* [*id*.].

For the sake of reiterating how little Plaintiff's EEOC charge has to do with race, the Court includes the entirety of the factual allegations she included in her charge:

> I complained about the services I received on visit [sic] April 24, 2022, at Smith Dental in Athens. I informed Matt, my supervisor, about the experience and requested for Smith Dental to cover services from other dentist who preformed [sic] the corrections for my mouth, McDonald and Manus Oral and Maxillofacial Surgery which cost $477.

> Upon return from medical leave per dentist, I was terminated due to Smith Dental errors on April 24, 2022, visit at the Athens location. Matt was aware of my experience on April 24th, and I sent doctor notes and pictures of my mouth that was swollen, painful and bleeding. I returned to work May 2, 2022, and was fired within 15 minutes of arrival. I was terminated by Matt and was asked to sign termination paper of events that did not occur. I refused to sign. I got my personal items and left.

> A few weeks prior, I had turned in my 2 weeks' notice to Matt due to getting an at-home job with Eversana. Matt begged me to stay and offered a raise to $21/hour to stay and help run the department and train new hires. I did end up turning the other job down to stay at Smith Dental. A few days after complaining about my service, Matt terminated

---

[5] Despite checking the "Other *(Specify)*" box, Plaintiff did not specify what "other" basis there could be for the alleged discrimination. *See* [Doc. 9-2, p. 1].

me.

[Doc. 9-2, p. 1]. Plain to see: Contrary to Plaintiff's assertions in her Response brief and Amended Complaint, Plaintiff's charge just flat out doesn't allude to any notion, suggestion, or even a hint that Defendants treated white employees differently, nor does it suggest that Defendants made up their reason for firing to cover up their true motive of racial discrimination. *See* [Doc. 9-2]. On the contrary, Plaintiff's charge states that "[a] few weeks prior, [her supervisor] begged [her] to stay and offered a raise to $21/hour to stay and help run the department and train new hires." [Doc. 9-2]. Looking at just the text of her charge, it's more likely that Plaintiff's charge suggests that Defendants fired her for complaining about the surgery they gave her, and a fair and objective reading of the charge does not indicate that Plaintiff was arguing to the EEOC that this was in retaliation for complaining about any statutorily protected activity. *See* [*id*. ("A few days after complaining about my service, [my supervisor] terminated me.")].

If Plaintiff had her way, claimants could bypass the EEOC by writing vague and poorly explained EEOC charges, knowing full well that the EEOC would immediately disregard them. Creating such a backdoor into federal court could be tantamount to flat-out ignoring the plain text of the Civil Rights Act, which clearly intended for the EEOC to be the first to review such allegedly discriminatory actions and to limiting potential Title VII plaintiffs to the scope of the factual allegations they

chose to include in their EEOC charge. *See Gregory*, 355 F.3d at 1279. Here, Plaintiff never mentions race or disability or retaliation; she only complains that she was fired after complaining about a bad dental procedure her employers gave her. She even threw in the catch-all category of "other" but doesn't explain what that means for purposes of her case. Bottom line, she drafted these allegations without the help of her lawyers, and she has to live with that decision. Given the self-imposed limitations she placed on herself when she drafted those factual allegations, the Court finds that the EEOC could not and should not have divined her true complaints (race and retaliation) from its investigation.

Accordingly, the Court **DISMISSES** Plaintiff's Title VII retaliation and race-discrimination claims based on her termination because Plaintiff failed to exhaust her administrative remedies before she filed suit.

But, as shown below, Plaintiff's § 1981 claims alleging race discrimination don't have any sort of exhaustion requirement. They survive.

>2.      <u>Failure to State a Claim</u>

>>a.      <u>Race-Discrimination Claims</u>

Defendants argue that Plaintiff fails to state a claim for race discrimination under § 1981, hanging their hat on the premise that Plaintiff failed to identify a comparator—that is, someone outside of her racial classification—which they call "an

essential element of any discrimination claim."[6] *See* [Doc. 11, pp. 8–9]. This argument is fundamentally flawed.

Defendants point to several cases from within the Eleventh Circuit that rely on the Supreme Court's burden-shifting framework from *McDonnell Douglas Corp. v. Green*. *See, e.g., Ezekiel v. Tift Cnty. Sch. Dist.*, No. 7:08-CV-127 HL, 2010 WL 3456135, at *5 (M.D. Ga. Aug. 27, 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973)); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Under *McDonnell Douglas*, one way that a plaintiff can establish a prima facie case of discrimination is by showing, among other elements, that the defendant treated a "comparator"—someone outside of plaintiff's racial classification—more favorably than plaintiff despite their comparable qualifications. *See McDonnell Douglas*, 411 U.S. at 802. The problem, however, is that Plaintiff is not required to plead all the elements of a *McDonnell Douglas* "prima facie case" to survive a motion to dismiss.[7]

As the Supreme Court has explained, the *McDonnell Douglas* framework "is an

---

[6] Defendants likewise argue that Plaintiff fails to state a claim for race discrimination under Title VII. *See* [Doc. 11, pp. 8–9]. However, although the standards for Title VII and § 1981 race discrimination are the same, the Court here will only address Plaintiff's claims under § 1981 because the Court dispensed with Plaintiff's Title VII claims on exhaustion grounds. *See Stallworth v. Shuler*, 777 F.2d 1431 (11th Cir. 1985) (explaining that the substantive standards of liability under Title VII and § 1981 are the same).

[7] In all fairness to Defendants, "parties (and sometimes courts) miss this fundamental point and wrongly treat the prima facie case as a substantive standard of liability." *Tynes v. Fla. Dep't of Juv. Just.*, No. 21-13245, 2023 WL 8593114, at *4 (11th Cir. Dec. 12, 2023). Although the phrase "prima facie case" ordinarily describes a plaintiff's burden of producing evidence to permit a trier of fact to infer a fact at issue, the phrase has a special meaning within the context of *McDonnell Douglas*. *Id.* In that context, it—quite paradoxically—means to establish a rebuttable presumption of discrimination. *Id.*

evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 510 (2002). "The complaint need not allege facts sufficient to make out a

classic *McDonnell Douglas* prima facie case." *Surtain v. Hamlin Terrace Found.*, 789 F.3d

1239, 1245–46 (11th Cir. 2015) (quoting *Swierkiewicz*, 534 U.S. at 511) (internal citations

omitted).

Section § 1981 prohibits employers from intentionally discriminating in

employment contracts on the basis of race.[8] *See Johnson v. Ry. Express Agency, Inc.*, 421

U.S. 454, 459–60 (1975); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). To

state a claim for race discrimination, "a complaint need only provide enough factual

matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin

Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015) (citing 42 U.S.C. § 2000e–

2(a)(1)).[9]

First, Plaintiff alleges that in December 2021, she applied for a lead position in

---

[8] Similarly, Title VII of the Civil Rights Act of 1964 outlaws employment discrimination because of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

[9] In *Surtain* the Eleventh Circuit analyzed a Title VII claim. *See Surtain v. Hamlin Terrace Found.*, 798 F.3d 1239, 1245–46 (11th Cir. 2015). True, Title VII and § 1981 cases share the same liability standards. *See Stallworth v. Shuler*, 777 F.2d 1431 (11th Cir. 1985); *see Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008); *Rodemaker v. Shumphard*, 859 F. App'x 450 (11th Cir. 2021) ("In an employment-discrimination context, the elements for §§ 1981 and 1983 are identical to those required to prove intentional discrimination under Title VII."). However, they have different standards of causation. For a § 1981 claim, the successful plaintiff must prove race was a but-for cause of the adverse employment action, whereas for a Title VII claim, the question becomes whether race was a "motivating factor." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014, 1017 (2020); *see also Rodemaker v. Shumphard*, 859 F. App'x 450 (11th Cir. 2021) ("One key difference, significant here, is that a § 1981 plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").

the Eligibility Department, but after Defendants interviewed her, they hired someone else from another department who was "less qualified than Plaintiff." [Doc. 9, p. 6]. Without the promotion or pay, "Plaintiff continued to perform all of the tasks required of the position," while the other individual continued working in her old department. [*Id*.]. The problem, according to Defendants, is that the other individual they hired is also an "African-American/black female." [*Id*.]; [Doc. 11, p. 9]. Defendants argue that Plaintiff therefore fails to allege a comparator outside her classification whom her employer treated more favorably. [Doc. 11, p. 9]. However, as shown above, Plaintiff doesn't have to allege a comparator to survive a motion to dismiss.

As the Supreme Court has explained, "[i]t may be difficult to define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence." *Swierkiewicz*, 534 U.S. at 507. "Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." *Id*. While a failure to produce a valid comparator may doom the avenue of proof relying on the burden-shifting framework from *McDonnell Douglas*, that framework isn't the only arrow in a plaintiff's quiver. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Thus, an inability to plead a comparator doesn't necessitate dismissal as Defendants would have it here.

Next, Plaintiff alleges that when Defendants implemented a cleaning rotation

16

for all employees, Plaintiff's supervisor tasked her with cleaning toilets, while "[n]one of the Caucasian/white managers were tasked with cleaning toilets." [Doc. 9, p. 9]. Defendants correctly note in their dismissal motion that Plaintiff was not a manager, so those Caucasian/white managers aren't (or more accurately, may not ultimately be) sufficient comparators. [Doc. 11, p. 11]. Defendants then argue that Plaintiff has failed identified a comparator who was *not* terminated under comparable circumstances as Plaintiff. [Doc. 11, pp. 11–12]. But, again, Defendants are kind of jumping ahead since Plaintiff is not required to even plead such facts. *See Swierkiewicz*, 534 U.S. at 511.

The Court clearly sees the story Plaintiff is trying to tell: The employer did not *really* hire the other black woman; they were simply trying to *look like* they were hiring a black woman without having one in an official position of power. *See* [Doc. 9, pp. 6–7]. They "hired" the woman (scare quotes intended), but kept her in her original role and yet still made Plaintiff perform all the job duties of the lead position without giving her the recognition and status bump. *See* [*id*.]. Meanwhile, although Defendants required her to perform like a manager without the pay or title, they nonetheless treated her like a low-level employee, making her perform demeaning tasks like cleaning toilets, and ultimately, when at last they had an adequate pretext, they fired her. *See* [Doc. 9, pp. 9–11].

It goes without saying that the Court certainly isn't weighing in on whether

17

Plaintiff's story will ultimately carry the day. The Court is simply saying that—if it

assumed all the facts that Plaintiff alleges to be true—a reasonable jury could find she

is entitled to relief. The Court is unwilling, at this most preliminary of stages, to take

away her chance to potentially offer evidence to support her theory. Although the

Court holds that Plaintiff's race discrimination claims under Title VII are barred

because of her failure to exhaust administrative remedies, the Court holds that she

has stated a claim for race discrimination, and those claims may proceed under §

1981. Therefore, the Court **DENIES** Defendants' Motion to Dismiss [Doc. 11] insofar

as it argues that Plaintiff has failed to state a claim for race discrimination under §

1981.

> ### b.    Family and Medical Leave Act

Since Plaintiff fails to state a claim for FMLA retaliation, the Court

**DISMISSES** that claim pursuant to Rule 12(b)(6). However, for the following

reasons, Plaintiff's FMLA interference claim will proceed for further factual

development.

The Eleventh Circuit recognizes that the FMLA creates two types of claims:

interference and retaliation. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261,

1267 (11th Cir. 2017 (quoting *Strickland v. Water Works & Sewer Bd. of City of*

*Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)). First, an interference claim is

appropriate where an employer denied or otherwise interfered with an employee's

substantive FMLA rights. *Id.*; *see also* 29 U.S.C. § 2615(a). Second, a retaliation claim is

appropriate where an employer discriminated against an employee because the

employee engaged in activity protected by the FMLA. *Jones*, 854 F.3d at 1267 (quoting

*Strickland*, 239 F.3d at 1206); *see also* 29 U.S.C. § 2615(b); 29 C.F.R. § 825.220. Plaintiff

here alleges both types. *See* [Doc. 9, p. 14].

      To state a claim of interference with a substantive right under the FMLA, an

employee need only demonstrate by a preponderance of the evidence that he or she

was entitled to the benefit denied. *Strickland v. Water Works & Sewer Bd. of City of*

*Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001). Plaintiff asserts that she was

"eligible to take protected FMLA leave" and that "Defendants interfered with

Plaintiff's FMLA rights by willfully failing to provide her with notification of her

rights." [Doc. 9, p. 14]. To support this, Plaintiff alleges that she "was not told of or

otherwise offered FMLA during the time she was out of work due to severe tooth

pain." [*Id*. at p. 9]. Defendants argue that failure to notify is only a technical infraction

and is therefore insufficient to support a claim of FMLA interference. [Doc. 11, pp.

15–16]; *see Corbin v. Med. Ctr, Navicent Health*, No. 5:15-CV-153 (CAR), 2017 WL

1241430, *3 (M.D. Ga. Mar. 31, 2017) (noting that failure to provide FMLA notice is

technical infraction, which is not recoverable). And they would be correct—if the

failure to notify were the only thing that Plaintiff alleged. However, Plaintiff also

alleges that she received her second disciplinary action while out on FMLA leave and

was subsequently fired. [Doc. 9, p. 11].

To state a claim for FMLA retaliation takes a little bit more. Plaintiff must allege facts, which if taken as true, would demonstrate that the employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Jones*, 854 F.3d at 1270 (quoting *Strickland*, 239 F.3d at 1207). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207 (internal citations omitted).

Here, Plaintiff alleges that she was terminated while out on FMLA leave and that the Defendants' stated reason—performance issues—was a mere pretext. This, however, is nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation[]." *See McCullough*, 907 F.3d at 1333. She alleges no facts supporting her assertion that it was pretext or that her employer was motivated by animosity for her absence from work. Therefore, only Plaintiff's FMLA interference claim survives.

## CONCLUSION

The Court **GRANTS in part** Defendants' Motion to Dismiss [Doc. 11], **DISMISSING** Plaintiff's Title VII race and retaliation claims, as well as her FMLA retaliation claim. However, the Court **DENIES in part** the Defendant's Motion to Dismiss [Doc. 11], finding that Plaintiff's Amended Complaint sufficiently states a

claim for relief under § 1981 and for FMLA interference. Therefore, Plaintiff's § 1981 race discrimination claim, as well as her claim for FMLA interference, shall proceed to discovery. In light of this ruling, the Court **LIFTS** the stay of discovery previously imposed. [Doc. 6].

**SO ORDERED**, this 29th day of December, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**